**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Rafael Brea, | ) | No. CV-11-00042-PHX-GMS |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) ) | |
| Heartland Express, Inc. of Iowa, an Iowa corporation, | ) ) ) | |
| Defendant. | ) ) ) ) | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 58). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff seeks compensation for unpaid overtime under the Fair Labor Standards Act ("FLSA") and violations of the Family and Medical Leave Act ("FMLA") related to his employment with Defendant, a national shipping company. Plaintiff began working for Defendant as a Fleet Manager in Defendant's Jacksonville Florida office in 2003. (Doc. 59 ¶ 4). In 2005, Plaintiff transferred to Defendant's Phoenix location, where he worked as a Route/Load Planner under the supervision of Terminal Manager Mark Crouse. (Doc. 59 ¶¶ 8–9). A Load Planner is responsible for making work assignments for drivers and ensuring that the freight is transported efficiently. (Doc. 59 ¶ 22). Plaintiff was paid a weekly salary, rather than an hourly wage. (Doc. 59 ¶ 32–38). Plaintiff and others employed at Defendant's

1 Phoenix location came to work at 7:00 a.m., and left when the work was done for the day,
2 between 5:00 and 7:00 p.m. Plaintiff would periodically work weekends. (Doc. 62 ¶ 28).

3 Plaintiff's health began to deteriorate in 2003 or 2004. In 2007 he was diagnosed with
4 muscular dystrophy. (Doc. 59 ¶ 40). In 2009, he spoke to Defendant's Human Resources
5 Department by phone and was told that he would be eligible for FMLA leave if he made a
6 request supported by a physician's certification. (Doc. 59 ¶ 44). On October 13, 2009, he
7 submitted a certification from his treating physician detailing his diagnosis of muscular
8 dystrophy. (Doc. 59-2, Ex. H). Plaintiff spoke to Crouse, his supervisor, about possibly
9 reducing his work schedule. (Doc. 62 ¶ DD). In early 2010, Plaintiff spoke to Defendant's
10 Human Resources office again, asking if his hours could be reduced. (Doc. 59 ¶ 50).
11 Defendant had taken no action based upon the certification from Plaintiff's doctor because
12 "there was really no information on the document we'd received from his physician that
13 indicated he was going to be using any time off or he would be missing any work." (Doc. 59-
14 2 Ex. E at 11:12–14). In February, Defendant contacted Plaintiff's physician, who
15 recommended that Plaintiff take 1–2 days off of work per week. (Doc. 59 ¶ 52). Defendant
16 then agreed that Plaintiff would work an exclusively Monday–Thursday workweek, but
17 advised Plaintiff that his salary would be proportionally reduced. (Doc. 59 ¶¶ 55–56).
18 Plaintiff advised Defendant that he believed that the arrangement was unfair, and resigned
19 on February 26, 2010. (Doc. 59 ¶ 57).

20 Plaintiff filed this suit on January 6, 2011, alleging that he was denied overtime as
21 required by the FLSA and that the arrangement offered by Defendant in February 2010
22 violated the FMLA. (Doc. 1).

**DISCUSSION**

**I.    Legal Standard**

25 Summary judgment is appropriate if the evidence, viewed in the light most favorable
26 to the nonmoving party, shows "that there is no genuine issue as to any material fact and that
27 the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only disputes
28 over facts that might affect the outcome of the suit will preclude the entry of summary

judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.     Analysis

### A.     Fair Labor Standards Act

The FLSA generally requires employers to pay overtime to employees who work over forty hours in a week. 29 U.S.C. § 207(a)(1) (2006). The FLSA admits to an "administrative exception" for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (2006). An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983). The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction" and FLSA exceptions are therefore "are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal citations omitted). The administrative exception is defined by regulation to mean any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. A job title alone does not establish that an employee is exempt; the status of any employee must be determined "on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2. Although

1 whether a particular set of job responsibilities meets the administrative exception is a pure
2 question of law, how an employee "spent his working time is a question of fact." *Bothell v.*
3 *Phase Metrics*, 299 F.3d 1120, 1124 (9th Cir. 2002). The fact that a position "required a great
4 deal of specialized knowledge and skill is not determinative" of whether the administrative
5 exception applies; rather, the exception applies when "the person has the authority or power
6 to make an independent choice, free from immediate direction or supervision, and with
7 respect to matters of significance." *Bothell*, 299 F.3d at 1129. Both parties agree that Plaintiff
8 was paid over $455 per week.

9 Defendant argues that Plaintiff was properly categorized as a non-salaried employee
10 because he "consistently received exceptional performance evaluations throughout the
11 entirety of his time at [Defendant]'s Phoenix office." (Doc. 58 at 8). Plaintiff notes that he
12 did not supervise other employees. (Doc. 62 ¶ N). Neither of these facts is probative of
13 whether his actual duties "directly related to the management or general business operations
14 of the employer" and include "the exercise of discretion and independent judgment with
15 respect to matters of significance." 29 C.F.R. § 541.200. Supervising others is not required
16 for a job to be classified as administrative. *See Palacio v. Progressive Ins. Co.*, 244 F. Supp.
17 2d 1040, 1046 (C.D. Cal. 2002) (emphasizing that the test is whether particular employees
18 "are of 'substantial importance' to a business, not that their work is necessarily related to
19 business management"). As the Ninth Circuit noted in *Bothell*, the Department of Labor's
20 regulations include the following under the exemption: "advising the management, planning,
21 negotiating, representing the company, purchasing, promoting sales, and business research
22 and control." *Bothell*, 299 F.3d at 1126 (quoting 29 C.F.R. § 541.205(b)).

23 Plaintiff's actual job duties are not in dispute. Plaintiff planned what loads trucks
24 would take and what routes they would drive. (Doc. 59-1, Ex. B at 49:15–22). Plaintiff's
25 decisions were made to maximize efficiency for the company and to save the company
26 money. (*Id.* at 50:4–6). Plaintiff would develop route plans for weekend drivers, which were
27 implemented in his absence. (*Id.* at 56:22–25). He would change or cancel load assignments
28 when appropriate. (*Id.* at 50:7–10). No other office workers in Phoenix were paid overtime,

1  although the mechanics who serviced the vehicles were hourly employees and therefore non-
2  exempt under FLSA. (Doc. 59-2, Ex. D at 23:23–25). Planning the routes of a trucking
3  company so as to maximize the efficiency of the operation is directly related to the "general
4  business operations of the employer." 29 C.F.R. § 541.200(2). The record indicates further
5  that Plaintiff operated with substantial independence; his supervisor stated that "[w]hen I am
6  not here, I am confident with [Plaintiff]'s decision-making." (Doc. 59-2, Ex. F at 44). He was
7  therefore allowed "the exercise of discretion and independent judgment with respect to
8  matters of significance." 29 C.F.R. § 541.200. His job was properly categorized as
9  administrative, and Defendant is granted summary judgment on the FLSA claim.

## II.     Family and Medical Leave Act

The FMLA entitles employees to a total of twelve workweeks of leave during any twelve month period when the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2006). It is "the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001). To implicate the FMLA, an employee "need not expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed for a qualifying reason." *Id.* (internal brackets omitted). The employer "may request medical certification to support the need for such leave." *Id.* "Generally, FMLA leave is unpaid leave." 29 C.F.R. § 825.207.

In 2009, Plaintiff asked about whether he would be entitled to FMLA leave, and submitted a document from his doctor certifying that he had muscular dystrophy. (Doc. 59-2, Ex. H). In that certification, one question for the physician reads, "Is the employee unable to perform any of his/her job functions due to the condition," a question to which the doctor checked the "No" box. (*Id.*). Although Plaintiff's request itself "placed [Defendant] on notice that the leave might be covered by the FMLA," Defendant was in possession of a doctor's certification stating that the medical condition did not require leave. *Bachelder*, 259 F.3d at 1130.

- 5 -

1  Plaintiff followed up on his inquiry in February of 2010. (Doc. 62, Ex. GG), At that
2  time, Plaintiff's physician informed Defendant that Plaintiff's condition required him to work
3  a shorter week. (Doc. 59 ¶¶ 51–52). Defendant states that it "was not immediately clear,
4  however, to Heartland's Human Resources Department whether this reduced workweek
5  going forward was more properly classified as a reasonable accommodation under the
6  Americans with Disabilities Act ('ADA') or an intermittent leave of absence under the
7  FMLA." (Doc. 59 ¶ 54). It further notes that Plaintiff thought the proposed arrangement was
8  unfair as a general principle, not because he believed it violated the FMLA. Defendant is not
9  entitled to summary judgment based upon the fact that its Human Resources Department was
10 confused or the fact that Plaintiff was not familiar with the intricacies of the FMLA. Neither
11 Defendant's confusion nor Plaintiff's stated reason for his dissatisfaction are relevant to the
12 question of whether Plaintiff made a request for FMLA leave that was not honored. "[T]he
13 employer's good faith or lack of knowledge that its conduct violated the Act is, as a general
14 matter, pertinent only to the question of damages under the FMLA, not to liability."
15 *Bachelder*, 259 F.3d at 1130. To the extent that differentiating the 2009 and 2010 requests
16 for leave is relevant, however, Plaintiff's physician only certified that the medical condition
17 required leave in 2010.
18 Finding all questions of fact in Plaintiff's favor, Plaintiff requested that his hours be
19 reduced because he had been diagnosed with muscular dystrophy, and his doctor confirmed
20 in 2010 that Plaintiff had a medical condition that required a shorter work week. Defendant
21 has made no argument that the arrangement it offered Plaintiff in fact complied with the
22 FMLA, so the Court need not consider any such argument on its own. The FMLA was
23 implicated by Plaintiff's request, and summary judgment is therefore not appropriate.

## CONCLUSION

25 Plaintiff's job was properly classified under the administrative exception to the FLSA.
26 Since there is no good-faith defense to liability for a claim under the FMLA, and no
27 requirement that an employee actually reference the FMLA when requesting leave,
28 Defendant has not demonstrated that it is entitled to summary judgment on the FMLA claim

- 6 -

during 2010.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 58) is **granted in part and denied in part**.  Count One is **dismissed**.  Count Two survives.

DATED this 16th day of July, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge